MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

ELISE BECKER (NYBN 2540730)
Assistant United States Attorney
    450 Golden Gate Ave., Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-7200
    Fax: (415) 436-7234
    E-Mail: elise.becker@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 11-0332 JSW |
| Plaintiff, | |
| v. | GOVERNMENT'S REQUEST FOR A FURTHER HEARING |
| RAGEH AHMED MOHAMMED AL-MURISI, | |
| Defendant. | |

INTRODUCTION

The government requests additional information from the Federal Bureau of Prisons to assist the Court in determining whether or not to forcibly medicate Mr. Al-Murisi in order to restore his competence to stand trial. In *Sell v. United States*, the Supreme Court set forth the following four-part standard for determining when a court can order pre-trial involuntary medication for trial competence purposes: (1) "a court must find that *important* governmental interests are at stake;" (2) "the court must conclude that involuntary medication will *significantly further* those concomitant state interests;" (3) "the court must conclude that involuntary medication is necessary to further those interests;" and (4) "the court must conclude that administration of the

GOVERNMENT'S REQUEST FOR A FURTHER HEARING
CR 11-0332 JSW

drugs is *medically appropriate, i.e.*, in the patient's best medical interest in light of his medical condition." 123 S.Ct. 2174, 2184-85 (2003) (emphasis in original). "Orders authorizing involuntary medication pursuant to this standard are 'disfavored'" and must be proven by clear and convincing evidence. *United States v. Ruiz-Gaxiola*, 623 F.3d 684, 688, 692 (9th Cir. 2010) (internal citation omitted). As set forth below, the government submits that additional information is necessary in order for the Court to find that the proposed involuntary medication of Mr. Al-Murisi satisfies all four requirements under *Sell*.

## RELEVANT FACTS

The facts bearing on the *Sell* factors in this case are as follows:

1. On May 8, 2011, Mr. Al-Murisi was arrested and charged with interference with flight crew members and attendants, in violation of 49 U.S.C. § 46504. The maximum penalty for this offense is 20 years imprisonment. Possible Sentencing Guidelines calculations under Section 2A5.2 could call for a sentence at either adjusted offense level 9 (4 to 10 months), 18 (27 to 33 months), or 30 (97 to 121 months). Mr. Al-Murisi has been in custody since his arrest over one year ago.

2. On July 21, 2011, Dr. Pablo Stewart, a psychiatric consultant in San Francisco, prepared a report for the defense in which he opined ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ of his interview which occurred on May 23, 2011. Dr. Stewart's interview with Mr. Al-Murisi took place at the Santa Rita jail and lasted approximately 2 hours.

3. On July 28, 2012, Dr. John Chamberlain, Associate Clinical Professor of Psychiatry at the University of California at San Francisco, prepared a report for the Court in which he opined ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Dr. Chamberlain's interview with Mr. Al-Murisi also took place at the Santa Rita Jail and lasted for 45 minutes.

GOVERNMENT'S REQUEST FOR A FURTHER HEARING
CR 11-0332 JSW                                    -2-

1. 4. On November 10, 2011, Drs. Tiffany Brown and Ralph Ihle, forensic psychologists at the Federal Bureau of Prisons Metropolitan Detention Center located in Los Angeles, California (MDC-LA), prepared a report for the Court in which they also opined ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Mr. Al-Murisi's evaluation at MDC-LA occurred over the course of approximately two months.

2. 5. On December 12, 2011, this Court found by a preponderance of the evidence that Mr. Al-Murisi was not competent to stand trial. The Court ordered that he be committed to the custody of the Attorney General for placement in a suitable facility for a period of time not to exceed four months to determine whether or not he would attain competence. Mr. Al-Murisi was subsequently placed at the Federal Bureau of Prisons Federal Medical Center at Butner, North Carolina (FMC-Butner).

3. 6. On May 29, 2012, the Court received a report from Dr. Lucking, Staff Psychiatrist in the Mental Health Department at FMC-Butner. He too opined ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Dr. Lucking requests that the Court decide whether or not Mr. Al-Murisi can be forced to take psychotic medications on an involuntary basis in order to restore his competence. Dr. Lucking Report (Report) at 28.

## ANALYSIS

I. <u>Dr. Lucking's report</u>

According to the latest report, ▓▓▓▓▓▓▓▓ Report at 13. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* ▓▓▓▓▓▓▓▓▓▓ Report at 12. ▓▓▓▓▓▓▓▓▓▓ (Report at 6,

GOVERNMENT'S REQUEST FOR A FURTHER HEARING
CR 11-0332 JSW                                    -3-

1  12), ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.*
2  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
3  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Report at 13. ▓▓▓▓▓▓▓▓▓▓▓
4  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
5  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* ▓▓▓▓▓
6  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
7  ▓▓▓▓▓▓▓▓▓▓▓▓ *Id.*
8  Dr. Lucking describes Mr. Al-Murisi's responses ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
9  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Report at 14. ▓▓▓▓▓▓
10 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
11 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
12 ▓▓▓▓▓▓ *Id.* ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
13 ▓▓▓▓▓▓▓▓▓▓▓▓ Report at 10. The government submits that it would be
14 relevant to the Court's determination to know whether or not that translator had been used with
15 Mr. Al-Murisi previously since the majority of translators did not have similar difficulties,
16 notwithstanding the fact that they translated by telephone. Report at 5, 9.
17     Mr. Al-Murisi's condition also appears to affect his ability to understand the full nature of
18 the criminal proceedings. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
19 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Report at 14. However, it is
20 unclear whether or not Mr. Al-Murisi was told that at some point. While Mr. Al-Murisi
21 understands the adversarial nature of the proceedings and the roles of the judge, prosecutor, and
22 defense counsel, Dr. Lucking's report notes ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
23 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
24 Report at 13. Unfortunately, this section of the report is missing approximately 12 words which
25 might affect the meaning and/or significance of the affected analysis. It would be extremely
26 helpful for the parties to receive another copy of the report without these possible formatting or
27 editing problems in order to fully understand and address the issues before the Court. In
28 addition, Mr. Al-Murisi's inadequate understanding of the legal process could be, in part, a result

1  of his upbringing in the Republic of Yemen (Yemen), where the legal system differs from that
2  established in the United States. In Yemen, criminal trials are conducted without juries. Alice
3  R. Buchalter, Library of Congress -Federal Research Division, Country Profile: Yemen (2008),
4  http://memory.loc.gov/frd/cs/profiles/Yemen.pdf. Therefore, judges possess the sole power to
5  adjudicate criminal cases. *Id.*
6
7  are consistent with the
8  Yemeni legal system. *See* Report at 8.
9  II. The *Sell* analysis
10 The first test under *Sell* is whether or not important government interests are at stake. *Sell*,
11 123 S.Ct. at 2184. "The likely guideline range is the appropriate starting point in determining
12 whether a defendant's crime is serious enough to satisfy the first prong of the *Sell* test." *Ruiz-*
13 *Gaxiola*, 623 F.3d at 694. The statutory maximum sentence in this case is 20 years, and Mr. Al-
14 Murisi faces a possible sentence as long as 97 to 121 months under the Sentencing Guidelines.
15 The facts of the case are also quite significant- Mr. Al-Murisi is accused of interfering with flight
16 crew while attempting to forcibly enter the cockpit during the flight's descent into San Francisco
17 International Airport. Approximately 162 people were on board. While Mr. Al-Murisi has been
18 in custody for over one year, he faces the possibility of a much lengthier sentence. Nor is there
19 any information in the current record to suggest that he might face a civil commitment which
20 could diminish the risks of not treating him in the context of the criminal case. *See Sell*, 123
21 S.Ct at 2184.
22 The second test under *Sell* is whether or not involuntary medication will *significantly further*
23 those interests. *Id.* Dr. Lucking opines that antipsychotic medication is substantially likely to
24 restore Mr. Al-Murisi to trial competence. Report at 23. Dr. Lucking further opines that
25 Haloperidol would serve that purpose. Report at 26. Furthermore, involuntary medication has
26 been very successful in restoring defendants to trial competence. Report at 24. In a 1993 article
27 by Ladds and colleagues, 87% of defendants who were involuntarily medicated were restored to
28 competence. *Id.* In order to have a better understanding of the treatment proposed for Mr. Al-

GOVERNMENT'S REQUEST FOR A FURTHER HEARING
CR 11-0332 JSW                              -5-

1  Murisi, the government submits that it would be helpful to have additional information on the
2  affect of Haloperidol on ▌
3  ▌ (Report at 12), yet the discussion of first and second generation
4  antipsychotic medication appears to be related to the diagnosis of schizophrenia (Report at 17).
5  Dr. Lucking notes that Haloperidol ▌ (possible
6  missing word) (...) ▌
7  ▌ Report at 23.   In this regard, the government submits that any additional information
8  relating to studies or articles discussing the success of Haloperidol in treating defendants with
9  thought disorders would be relevant to the Court's determination.
10      The third test under *Sell* is whether or not involuntary medication is *necessary* to further
11  those interests.  *Sell*, 123 S.Ct. at 2185.  Dr. Lucking notes that "there is no evidence that
12  psychotherapeutic techniques alone are effective alternatives for treatment with antipsychotic
13  agents."  Report at 26. ▌
14  ▌ *Id.*  As
15  such, Dr. Lucking does not propose any alternative to treatment with antipsychotic medication.
16  The government submits that it would be relevant to know whether or not Dr. Lucking would
17  have thought that ▌
18  ▌ would have similarly not benefitted from other alternative forms of treatment.  For
19  example, ▌
20  However, ▌
21  ▌ The government submits that it would be relevant to know whether or
22  not Mr. Al-Murisi's ▌ is of such a nature that it would not be affected by
23  anything other than antipsychotic medication, and if so, on what that opinion is based.  In
24  addition, it would be relevant to know what Dr. Lucking suspects would happen if Mr. Al-Murisi
25  remains unmedicated.
26      The fourth test under *Sell* is whether or not the administration of the drugs is *medically*
27  *appropriate.*   *Sell*, 123 S.Ct. at 2185.  Dr. Lucking provides a detailed analysis of both first and
28  second generation antipsychotic medication, as well as their possible side effects.  Unfortunately,

1 several words are missing in this discussion, including the critical detail of the test dosage
2 amount.[1]  *See* Report at 26.  While there are significant side effects to the proposed medication,
3 Dr. Lucking has already proposed a treatment plan to address them if necessary.

4                                                     CONCLUSION

5     For the reasons set forth above, the government requests additional information from the
6 Bureau of Prisons in order to recommend that the Court order the involuntary medication of Mr.
7 Al-Murisi.

9 DATED: July 3, 2012                    Respectfully submitted,

10                                                      MELINDA HAAG
                                                        United States Attorney
11                                                              /s/

12                                                      _____
                                                        Elise Becker
13                                                      Assistant United States Attorney

---

[1]/ The government proposes that it assist the Bureau of Prisons in identifying all of the missing words or entries in order to expedite the proposed revisions and additions to the report.

GOVERNMENT'S REQUEST FOR A FURTHER HEARING
CR 11-0332 JSW                                        -7-